# Exhibit A



CREATING
LAW
ENFORCEMENT
ACCOUNTABILITY &
RESPONSIBILITY

November 7, 2019

U.S. Customs and Border Protection
FOIA Officer
90 K Street NE, 9th Floor
Washington, D.C. 20229-1181

**Re:    FOIA Request Concerning Tactical Terrorism Response Teams (Expedited
         Processing & Fee Waiver/Limitation Requested)**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation
(together, the "ACLU")[1] and the Creating Law Enforcement Accountability & Responsibility
("CLEAR") Project at the City University of New York ("CUNY") School of Law[2] submit this
Freedom of Information Act request (the "Request"). The Request seeks records pertaining to
U.S. Customs and Border Protection's Tactical Terrorism Response Teams, which target
travelers arriving at a U.S. port of entry holding valid admission documents and who have not
been previously identified as presenting a security risk.

## I. Background

According to statements by U.S. Customs and Border Protection ("CBP") officials, one
objective of Tactical Terrorism Response Teams ("TTRTs") is to identify and deny entry to
travelers holding valid visas or other travel documents and who have not been flagged as a
security threat.[3] CBP has not disclosed the criteria TTRT officers use to determine which

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal
representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the
public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a
separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties
implications of pending and proposed state and federal legislation, provides analysis of pending and proposed
legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] The CLEAR Project is a clinical project of Main Street Legal Services at the CUNY School of Law in Long
Island City, New York, dedicated to addressing the needs of communities targeted by government policies and
practices deployed under the guise of national security and counterterrorism.

[3] *See* Brian Dodwell & Paul Cruickshank, "A View from the CT Foxhole: An Interview with Kevin
McAleenan, Commissioner of U.S. Customs and Border Protection," CTC Sentinel, Sept. 2018, at 9, available at
https://ctc.usma.edu/app/uploads/2018/09/CTC-SENTINEL-092018.pdf; *Raising the Standard: DHS's Efforts to
Improve Aviation Security Around the Globe: Hearing Before the H. Comm. on Homeland Security, Subcomm. on
Transp. and Protective Security,* 115 Cong. 12 (2017) (statement of Todd Owen, CBP Office of Field Operations
Executive Assistant), available at https://www.govinfo.gov/content/pkg/CHRG-115hhrg28417/pdf/CHRG-
115hhrg28417.pdf; *Preventing Terrorists from Acquiring U.S. Visas: Hearing Before the H. Comm. on Homeland
Security, Task Force on Denying Terrorist Entry into the United States,* 115 Cong. 18 (2017) (statement of Michael
Dougherty, DHS Office of Policy Acting Assistant Secretary for Border, Immigration and Trade, John Wagner, CBP
Office of Field Operations Deputy Executive Assistant Commissioner, and Clark Settles, CBP Office of Field

travelers to target for inspection. Former CBP Commissioner and current Acting Secretary of Homeland Security Kevin McAleenan has described the "Tactical Terrorism Response Team concept" as "a conscious effort by the Office of Field Operations…to take advantage of those instincts and encounters that our officers have with travelers to make decisions based on risk for people that might not be known on a watch list, might not be a known security threat."[4] McAleenan has lauded TTRT officers as having "tremendous success in identifying previously unknown individuals that present a security risk and in denying entry to folks that were not watch listed prior to their travel."[5] In September 2017, CBP officials reported that in the then-fiscal year to date, "more than 1,400 individuals were denied entry to the United States as a result of TTRT efforts and information discovered during the secondary inspection at [U.S. ports of entry]."[6]

TTRT officers also target travelers, including U.S. citizens, who do not themselves present a security risk. CBP officials have asserted that TTRT officers examine "travelers, their associates, or co-travelers who arrive at POE and are suspected of having a nexus to terrorist activity."[7] McAleenan has indicated that "watchlist nominations" have "devolve[d] from a good interview at the border" by TTRT officers.[8] He has also stated that that there are "people traveling to different regions of the world that want to offer information to the government about security risks that they saw in their foreign engagements" and "[b]eing able to offer that information to agency partners is another way we measure [TTRTs'] success."[9]

TTRTs raise serious constitutional concerns. The criteria TTRT officers use to determine which travelers to target for interview or inspection remain secret, but recent reporting suggests that these criteria may rely on race, religion, ethnicity, national origin, or their proxies.[10] TTRT officers may also be targeting travelers, including U.S. citizens, based on their speech and associative activity, which may be protected under the First Amendment.[11] And by subjecting travelers who are not reasonably suspected of any wrongdoing to interview or inspection, TTRT officers are invading their privacy and potentially retaining and sharing information on their

---

Operations Deputy Executive Assistant Commissioner and ICE Homeland Security Investigations Assistant Director for National Security Investigations Division), available at https://www.govinfo.gov/content/pkg/CHRG-115hhrg27293/pdf/CHRG-115hhrg27293.pdf.

[4] Dodwell & Cruickshank, *supra*, at 11.

[5] *Id.*

[6] Raising the Standard, supra, at 12.

[7] *Id.*

[8] Dodwell & Cruickshank, *supra*, at 11.

[9] *Id.*

[10] *See* Murtaza Hussain, "His Visa Was Stamped, His Papers in Order. Then He Was Targeted by a Secretive CBP Task Force." The Intercept, May 13, 2019, https://theintercept.com/2019/05/13/customs-border-protection-profiling-airport/.

[11] *See* Megan Hernbroth, "We Talked to the Apple Employee Who Says CBP Detained Him and Tried to Search His Phone and Laptop: 'The Most Invasive Search the Government Could Possibly Do,'" Business Insider, Apr. 6, 2019, https://www.businessinsider.com/andreas-gal-aclu-cbp-phone-laptop-2019-4.

innocent activity. These activities raise further questions regarding whether CBP has adequately notified the public or provided opportunity for public comment regarding TTRTs.

Despite these concerns, little information is available to the public about TTRTs, including the policies and guidelines that govern their activities. The public similarly lacks knowledge of how travelers are selected for interview or inspection and the potential consequences for affected individuals.

To provide the public with information about TTRTs, including their policies and conduct, the ACLU and CLEAR submit this FOIA Request.

## II. Requested Records

(1)    Formal or informal policies, guidance, procedures, bulletins, memoranda, and/or legal opinions pertaining to TTRTs, including but not limited to, records concerning:

   a.    How travelers are screened and/or targeted for interviews or inspection by TTRTs;

   b.    Profiling based on race, religion, ethnicity, and/or national origin and their proxies, such as name or appearance;

   c.    Whether and how a watchlist nomination may result from TTRT interviews or inspection;

   d.    The retention, storage, sharing, and/or deletion of information about travelers subject to TTRT interviews or inspection;

(2)    Training and/or course materials for TTRT officers, whether developed by CBP or by other agencies, including but not limited to materials related to reliance on race, religion, ethnicity, and/or national origin and their proxies;

(3)    Formal or informal reports, evaluations, audits, or analyses concerning the effectiveness of TTRTs;

(4)    Records sufficient to show, since January 1, 2017:

   a.    The number of individuals denied entry as a result of TTRT activities and their immigration status and/or basis for application for admission;

   b.    The races, ethnicities, and/or national origins of the individuals denied entry as a result of TTRT activities;

(5)     Records sufficient to show, since January 1, 2017:

    a.     The number of individuals targeted for interview or inspection by TTRTs and their immigration status and/or basis for application for admission;

    b.     The races, ethnicities, and/or national origins of the individuals targeted for interview or inspection by TTRTs;

    c.     The number of individuals targeted for interview or inspection by TTRTs for the purpose of gathering information about third parties, including watchlisted persons;

(6)     Records sufficient to show the number of individuals nominated to a watchlist by TTRTs since January 1, 2017;

(7)     Records sufficient to show, since January 1, 2017:

    a.     The number of individuals targeted for interview or inspection by TTRTs who were asked to but declined to sign Form I-275, "Withdrawal of Application for Admission";

    b.     The number of individuals targeted for interview or inspection by TTRTs who signed Form I-275;

    c.     The number of individuals targeted for interview or inspection by TTRTs for whom Forms I-867A, which contains a record of the basis for CBP's determination that an individual is subject to Expedited Removal, and/or I-867B, which consists of questions designed to assess whether a traveler has a fear of returning to his or her country, were prepared;

    d.     The number of individuals targeted for interview or inspection by TTRTs for whom Form I-870, "Notice and Order of Expedited Removal," was prepared;

(8)     Records concerning complaints, grievances, and/or concerns raised by CBP officers or other government officials related to TTRTs;

(9)     Records concerning investigations of and/or disciplinary action related to TTRT officers;

(10)    All records created, sent, received, referenced, and/or used in fulfilling and/or responding to this Request.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU and CLEAR request that responsive electronic records be provided electronically in their native file

format, if possible. Alternatively, the ACLU and CLEAR request that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

### III. Application for Expedited Processing

The ACLU and CLEAR request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[12] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by organizations primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

*A.     The ACLU and CLEAR are organizations primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU and CLEAR are "primarily engaged in disseminating information" within the meaning of the statute. *See id.*[13] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU and CLEAR's work and are among their primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[14]

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to 850,000 people. The ACLU also publishes regular updates and alerts via email to 3.9 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to 4.8 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[15] and ACLU attorneys are interviewed

---

[12] *See also* 6 C.F.R. § 5.5(e).

[13] *See also* 6 C.F.R. § 5.5(e)(1)(ii).

[14] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[15] Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://www.aclu.org/press-releases/federal-court-permanently-blocks-billions-dollars-border-wall-construction; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://www.aclu.org/press-releases/new-documents-reveal-nsa-improperly-collected-americans-call-records-yet-again; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://www.aclu.org/press-releases/aclu-and-center-media-justice-sue-fbi-records-surveillance-black-activists; Press Release, ACLU, ACLU, Privacy International Demand

frequently for news stories about documents released through ACLU FOIA requests.[16]

The ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[17] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The

Government Disclose Nature and Extent of Hacking Activities (Dec. 21, 2018), https://www.aclu.org/press-releases/aclu-privacy-international-demand-government-disclose-nature-and-extent-hacking; Press Release, ACLU, New Documents Reveal Government Plans to Spy on Keystone XL Protesters (Sept. 4, 2018), https://www.aclu.org/news/new-documents-reveal-government-plans-spy-keystone-xl-protesters; Press Release, ACLU, ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody (May 22, 2018), https://www.aclu.org/news/aclu-obtains-documents-showing-widespread-abuse-child-immigrants-us-custody; Press Release, ACLU, ACLU Demands CIA Records on Campaign Supporting Haspel Nomination (May 4, 2018), https://www.aclu.org/news/aclu-demands-cia-records-campaign-supporting-haspel-nomination; Press Release, ACLU, Advocates File FOIA Request For ICE Documents on Detention of Pregnant Women (May 3, 2018), https://www.aclu.org/news/advocates-file-foia-request-ice-documents-detention-pregnant-women; Press Release, ACLU, Civil Rights Organizations Demand Police Reform Documents from Justice Department (Jan. 4, 2018), https://www.aclu.org/news/civil-rights-organizations-demand-police-reform-documents-justice-department; Press Release, ACLU, ACLU Files Lawsuits Demanding Local Documents on Implementation of Muslim Ban (Apr. 12, 2017), https://www.aclu.org/news/aclu-files-lawsuits-demanding-local-documents-implementation-trump-muslim-ban.

[16] *See, e.g.*, Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times, June 26, 2019, https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU attorney Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill, Mar. 21, 2019, https://thehill.com/policy/national-security/fbi/435143-fbi-sued-over-black-activist-surveillance-records (quoting ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program (quoting ACLU attorney Hugh Handeyside); Larry Neumeister, *Judge Scolds Government over Iraq Detainee Abuse Pictures*, The Associated Press, Jan. 18, 2017, https://www.apnews.com/865c32eebf4d457499c017eb837b34dc (quoting ACLU project director Hina Shamsi).

[17] See, e.g., ACLU, Bad Trip: Debunking the TSA's 'Behavior Detection' Program (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf; Carl Takei, ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most (Aug. 8, 2016), https://www.aclu.org/ blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative (2016), https://www.aclu.org/ report/leaving-girls-behind; Nathan Freed Wessler, ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida (Feb. 22, 2015), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Nathan Freed Wessler, FBI Documents Reveal New Information on Baltimore Surveillance Flights (Oct. 30, 2015), https://www.aclu.org/blog/ free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, including analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features. [18]

The ACLU website includes many features on information obtained through the FOIA. For example, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of its contents relating to government policies on rendition, detention, and interrogation.[19] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.[20]

Similarly, CLEAR is "primarily engaged in disseminating information." 5 U.S.C. §

---

[18] *See, e.g., ACLU v. ODNI*—FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act, ACLU Case Page, https://www.aclu.org/cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act; *ACLU v. DOJ*—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media; *ACLU v. DOJ*—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties; Executive Order 12,333—FOIA Lawsuit, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit; ACLU Motions Requesting Public Access to FISA Court Rulings on Government Surveillance, ACLU Case Page, https://www.aclu.org/cases/aclu-motions-requesting-public-access-fisa-court-rulings-government-surveillance; *ACLU v. DOJ*—FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-demanding-olc-opinion-common-commercial-service-agreements; FOIA Request for Justice Department Policy Memos on GPS Location Tracking, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking; Florida Stingray FOIA, ACLU Case Page, https://www.aclu.org/cases/florida-stingray foia; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida,* (Feb. 22, 2015) https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida?redirect=blog/national-security-technology-and-liberty/aclu-obtained-documents-reveal-breadth-secretive-sting.

[19] *The Torture Database*, ACLU Database, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[20] Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010, ACLU (Nov. 29, 2010), https://www.aclu.org/files/pdfs/natsec/faafoia 20101129/20101129Summary.pdf; Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/ safefree/ olcmemos_2009_0305.pdf; Statistics on NSL's Produced by Department of Defense, ACLU, https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

552(a)(6)(E)(v)(II). The CLEAR Project is part of the CUNY School of Law, an educational institution that operates a program of scholarly research and publication. It was created to serve the needs of individuals from marginalized communities, including Muslim, Arab, and South Asian communities, affected by policies and practices deployed under the guise of national security and counterterrorism. The impact on these communities is compounded by the secrecy surrounding these policies and practices. One of CLEAR's primary goals is therefore to educate the communities it serves on the policies and practices affecting them by widely disseminating information on them obtained through FOIA.

Since its inception, CLEAR has conducted hundreds of Know Your Rights presentations to communities across the New York City metropolitan area, including trainings on an individual's rights while traveling, and on interactions with law enforcement officers. *See* https://www.cunyclear.org/resources. CLEAR regularly updates the content of these presentations, and their accompanying materials, to incorporate information obtained from the government through the FOIA over time to include, for example, information on the authority CBP claims to search electronic devices, watchlisting, and information related to the Controlled Application Review and Resolution Program ("CARRP"). *See id.* CLEAR publishes and widely distributes materials incorporating this information.[21] For maximum reach, CLEAR has also created videos incorporating this information for wide dissemination online.[22]

In order to document and raise awareness on the impact of policies on communities with whom CLEAR works, CLEAR publishes reports examining and commenting on information obtained from the government and law enforcement entities.[23] CLEAR frequently serves as a resource for the news media on these issues as well.[24]

The records requested are not sought for commercial use and the ACLU and CLEAR plan to analyze, publish, and disseminate the information disclosed as a result of this Request to the public at no cost.

---

[21] *See, e.g.* CLEAR Project, "What to Do in Interactions with Law Enforcement", https://static1.squarespace.com/static/59134566e58c623970f2cd48/t/5c526b0cb8a045df091a58f4/1548905230279/E NGLISH+WHAT+TO+DO+IN+INTERACTION+WITH+LAW+ENFORCEMENT.pdf; CLEAR Project, "Flying While Muslim", https://static1.squarespace.com/static/59134566e58c623970f2cd48/t/5c526bcf8a922d94b7b728bb/1548905424463/ ENGLISH+FLYING+WHILE+MUSLIM.pdf.

[22] *See, e.g.* CLEAR Project, "Flying While Muslim: Your Rights at U.S. Airports & Borders," *available at* https://youtu.be/Qv3C9V731Ns.

[23] *See, e.g.* CUNY CLEAR et al., Mapping Muslims: NYPD Spying and Its Impact on American Muslims (2013).

[24] Cora Courrier, *Hidden Loopholes Allow FBI Agents to Infiltrate Political and Religious Groups*, The Intercept, Jan. 31, 2017, https://theintercept.com/2017/01/31/hidden-loopholes-allow-fbi-agents-to-infiltrate-political-and-religious-groups/; Alleen Brown et al, *Standing Rock Documents Expose Inner Workings of "Surveillance-Industrial Complex"*, The Intercept, June 3, 2017, https://theintercept.com/2017/06/03/standing-rock-documents-expose-inner-workings-of-surveillance-industrial-complex/; Cora Courrier, Revealed: *The FBI's Secret Methods for Recruiting Informants at the Border,* The Intercept, Oct. 5, 2016, https://theintercept.com/2016/10/05/fbi-secret-methods-for-recruiting-informants-at-the-border/.

B.    *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[25] Specifically, they pertain to TTRTs, through which CBP targets U.S. citizens and non-citizen travelers with valid admission documents who have previously not been identified as security risks and subjects them to additional scrutiny at the border. As discussed in Part I, *supra*, targeting of these individuals by TTRTs raises serious constitutional concerns, but little information is available to the public regarding the nature, extent, and consequences of TTRT activities. The ACLU and CLEAR have therefore satisfied the requirements for expedited processing of this Request.

## IV. Application for Waiver or Limitation of Fees

The ACLU and CLEAR request a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[26] The ACLU and CLEAR also request a waiver of search fees on the grounds that each organization qualifies as a "representative of the news media" and neither organization seeks the records for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.    *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU and CLEAR.*

As discussed above, little information is publicly available regarding TTRTs. The records sought are therefore certain to contribute significantly to the public's understanding of TTRTs, their effectiveness, and their consequences, including how their activities affect individual privacy and liberty.

Neither the ACLU nor CLEAR is filing this Request to further its respective commercial interest. As described above, any information disclosed by the ACLU and CLEAR as a result of this FOIA Request will be made available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.    *The ACLU and CLEAR are representatives of the news media and the records are not sought for commercial use.*

The ACLU and CLEAR also request a waiver of search fees on the basis that the ACLU and CLEAR each qualify as a "representative of the news media" and neither organization seeks

---

[25] *See also* 6 C.F.R. § 5.5(e)(1)(ii).

[26] *See also* 6 C.F.R. §5.11(k)(1).

9

the records for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).[27] The ACLU and CLEAR respectively meet the statutory and regulatory definitions of a "representative of the news media" because each is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[28]; *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU and CLEAR are therefore each a "representative of the news media" for the same reasons that they are "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU and CLEAR's to be "representatives of the news media" as well. *See, e.g., Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," to be a news media requester).[29] As was true in those instances, the ACLU and CLEAR meet the requirements for a fee waiver here.

*        *        *

Pursuant to applicable statutes and regulations, the ACLU and CLEAR expect a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(e)(4).

If the Request is denied in whole or in part, the ACLU and CLEAR ask that you justify all denials by reference to specific exemptions to FOIA. The ACLU and CLEAR expect the

---

[27] *See also* 6 C.F.R. § 5.11(k)(2)(iii).

[28] *See also* 6 C.F.R. §5.11(b)(6).

[29] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

release of all segregable portions of otherwise exempt material. The ACLU and CLEAR reserve the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Scarlet Kim
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, New York 10004
T: 212.549.2500
scarletk@aclu.org

We affirm that the information provided supporting the request for expedited processing is true and correct to the best of our knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Sincerely,

Scarlet Kim
American Civil Liberties Union
 Foundation
125 Broad Street, 18th Floor
New York, New York 10004
T: 212.549.2500
scarletk@aclu.org


Tarek Z. Ismail
CLEAR Project
CUNY School of Law
2 Court Square
Long Island City, NY 11101
T: 718.340.4141
tarek.ismail@law.cuny.edu