UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
---------------------------------X  Docket#
CLEAR, ET AL.,                   : 19-cv-07079(RER)
                                 :
                  Plaintiffs,    :
                                 :
      - versus -                 : U.S. Courthouse
                                 : Brooklyn, New York
U.S. CUSTOMS AND BORDER PATROL,  :
                                 : April 26, 2021
                  Defendant      :
---------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**


**For the Plaintiff**:          **Scarlet Kim, Esq.**
                                **Patrick C. Toomey, Esq.**
                                **Tarek Z. Ismail, Esq.**
                                American Civil Liberties
                                 Union Foundation
                                125 Broad Street, 18th Floor
                                New York, NY 10004


**For the Defendant**:          **Kathleen A. Mahoney, Esq.**
                                Assistant U.S. Attorney
                                271 Cadman Plaza East
                                Brooklyn, New York 11201



**Transcription Service**:      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                RL.Transcriptions2@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1            THE COURT:  We are recording.

2            Good morning.  This is Magistrate Judge Reyes.

3    We are holding a video oral argument in *CLEAR v. The*

4    *United States Customs and Border Protection*, docket

5    number 19-cv-7079.

6            Counsel for the plaintiffs, please state your

7    name for the record starting with the most senior

8    attorney as far as responsibility is concerned, not as

9    far as age or years of practice.

10           MS. KIM:  Good morning, your Honor.  Scarlet

11   Kim from the ACLU for plaintiffs.

12           THE COURT:  Who else is on for plaintiffs?

13           MR. TOOMEY:  This is Patrick Toomey, your

14   Honor, also from the ACLU.

15           MR. ISMAIL:  And Tarek Ismail from CLEAR, your

16   Honor.  Good morning.

17           THE COURT:  Good morning.  Counsel for Customs

18   and Border Protection?

19           MS. MAHONEY:  Assistant United States Attorney

20   Kathleen Mahoney.  Good morning, everyone.

21           THE COURT:  Good morning.  So we have dueling

22   motions for summary judgment and the plaintiffs asked for

23   oral argument, so why don't we start with them?

24           MS. KIM:  Thank you, your Honor.  I'd like to

25   cover three points today but before I do so I thought it

3

Proceedings

1  would be useful just to briefly remind the Court what

2  this case is about.

3           This case seeks records from CBP on their

4  technical -- excuse me, tactical --

5           THE COURT:  It's a tongue twister.  I know.

6           MS. KIM:  On their tactical terrorism response

7  teams, or TTRTs.  TTRTs are secretive CBP units that

8  target travelers, including U.S. citizens who are not

9  known security threats as they arrive at U.S. ports of

10 entry.

11          Since 2017, TTRTs have targeted over 600,000

12 travelers including approximately 180,000 U.S. citizens

13 subjecting them to detention, searches, and

14 interrogations.  They've also refused thousands of

15 travelers arriving with valid admission documents entry

16 into this country.  Yet despite the significant and

17 sometimes devastating ways that TTRTs impact travelers,

18 the public has virtually no insight into the nature of

19 their activities whether they comport with the law or are

20 subject to adequate safeguards.

21          Plaintiffs seek this basic information.  At

22 this stage they've identified a subset of withholdings

23 consisting predominantly of policies and training

24 materials which they believe will help illuminate these

25 issues for the public.

4

Proceedings

1    CBP has refused to disclose this subset of

2  challenged withholdings citing Exemption 7(E) which

3  protects law enforcement techniques and procedures or

4  guidelines.  But its justification consists of little

5  more than a recitation of the statutory standard and the

6  generic assertion that disclosing such materials would

7  correct its investigations.  These statements are

8  patently insufficient to sustain the agency's burden at

9  summary judgment.

10    The three points I like to address our first

11  the inadequacy of CBP's declaration and bond index and

12  the Second Circuit's repudiation of the exact approach

13  that CBP has chosen to explain its withholdings.

14    Second, how the declaration and indexes and

15  inadequacies permeate the specific showing CBP must make

16  in the Exemption 7(E) context.

17    And finally, I'd like to conclude by offering

18  plaintiff's view on how as a practical matter the Court

19  should respond to CBP's failures at summary judgment.

20    With respect to the declaration and bond index,

21  it's canonical that the agency bears the burden of

22  showing that its withholdings fall within its claimed

23  exemptions.  And it's equally well established that where

24  an agency submits a declaration to sustain its burden it

25  must describe the withholdings and its justifications for

5

Proceedings

1   non-disclosure with reasonably specific detail.  But the

2   declaration and index together explain the withholdings

3   in a manner that the Second Circuit explicitly repudiated

4   as failing the reasonable specificity standard in *Halpern*

5   *v. FBI*.  There, just as CBP has done here, the FBI

6   submitted the declaration describing broad categories of

7   information and then asserted that information falling

8   into those categories would be subject to its claimed

9   exemption.  And the court found there that the agency's

10  failure to apply the exemption to the specific facts of

11  the documents at hand meant that it was not reasonably

12  specific.

13          Here, CBP's approach is even more egregious.

14  In *Halpern*, the FBI actually correlated each of its

15  withholding to the broad categories in its declaration.

16  The court still rejected the declaration as inadequate.

17          Here, CBP does not even correlate any of the

18  withholdings to the broad categories outlined in its

19  declaration.  Thus the categories essentially float

20  untethered to any withholding, nor are they mapped at all

21  to the Vaughn Index.  Those categories are therefore

22  essentially meaningless.

23          CBP even concedes at paragraph 43 of its

24  declaration that the broad categories it's outlined will

25  capture all the withholdings and it admits that it's

6

Proceedings

1  categories are not an all inclusive rendering of all

2  withheld information.

3          *Halpern* also dictates that the Vaughn Index

4  must fail under the reasonable specificity standard.

5  Even though the index lists the documents withheld in

6  full, it uses identical boilerplate language to justify

7  every single one of those withholdings.  If the agency

8  can submit the same generic justification across every

9  single withholding that would essentially render the de

10 novo scrutiny that FOIA requires a dead letter.

11         And notably, the justification that CBP uses in

12 the index is similar to the categorical justification

13 that the FBI provided and the court rejected in *Halpern*.

14 In *Halpern*, the FBI argued that disclosing the withheld

15 information would reveal FBI intelligence methods and

16 activities which would allow hostile entities to develop

17 countermeasures and thereby disrupt FBI intelligence

18 gathering.

19         CBP offers essentially the same justification

20 for every withholding.  It says that disclosing the

21 withholdings would reveal law enforcement procedures and

22 practices which would enable individuals to effectuate

23 countermeasures and thereby corrupt CBP investigations.

24         In *Halpern*, the court found this language

25 conclusory and failing to provide the kind of fact

7

Proceedings

1   specific justification necessary to demonstrate

2   reasonable specificity.  And plaintiffs submit that this

3   Court should come to the same conclusion with respect to

4   CBP's boilerplate justifications.

5           Plaintiffs also note that courts have

6   specifically rejected the type of boilerplate explanation

7   that CBP has provided as inadequate in the Exemption 7(E)

8   context.

9           For example, in *ACLU v. ODNI* (SDNY 2011) the

10  ACLU sought information on the implementation of a

11  foreign intelligence surveillance statute.  There the

12  court rejected an FBI declaration which invoked Exemption

13  7(E) on the basis that the information withheld would

14  disclose and enable -- that if disclosed would enable

15  targets to avoid detection or develop countermeasures.

16  And the court rejected that as a generic assertion and

17  boilerplate insufficient to carry the agency's burden.

18          Here CBP uses a nearly identical justification

19  for every one of its withholdings namely that disclosure

20  would enable individuals to effectuate countermeasures

21  and it should therefore similarly --

22          THE COURT:  Ms. Kim, how much specificity does

23  the declaration need to have and how can the agency not

24  disclose the content of documents by being more specific?

25          MS. KIM:  Yes, your Honor.  So in terms of the

8

Proceedings

1 specificity, I'd just like to make clear that either the

2 declaration or the index can satisfy the reasonable

3 specificity standard.  So the point here is that at least

4 one of those documents needs to both describe the records

5 with reasonable specificity and provide a sufficient

6 justification, and neither of those documents viewed

7 alone or together satisfies that standard.

8          With respect to how that standard applies,

9 particularly in the Exemption 7(E) context, I would point

10 the Court to a D.C. Circuit case, *Citizens For*

11 *Responsibility and Ethics*, which provided that in the

12 Exemption 7(E) context, the agency must provide two sets

13 of information.  First, it must describe with some

14 specificity exactly what techniques and procedures are at

15 play and it must also explain how the document would

16 disclose those techniques and procedures.

17          And I think one way to consider how this would

18 apply in practice is to look at *Whitaker v. Department of*

19 *Justice* which is actually a case that CBP cited in its

20 own briefing, a district court for D.C. case.  That

21 case --

22          THE COURT:  Let me --

23          MS. KIM:  Yes, your Honor.

24          THE COURT:  Let's stop there.  So with respect

25 to the law enforcement methods for inspecting travelers

9

Proceedings

1   at ports of entry which was one of the sort of

2   categories, if you will, of documents that were withheld

3   under 7(E), Howard says CBP withheld under exemption

4   (b)(7)(E) law enforcement techniques and procedures

5   including officer instructions not generally known to the

6   public that CBC uses at ports of entry for examination

7   and inspection of international travelers.  For example,

8   CBP withheld instructions for CBP officers on specific

9   topics for questioning travelers seeking admission into

10  the United States, criteria CBP uses to determine which

11  travelers require further scrutiny, inspecting

12  individuals who are identified as posing a

13  counterterrorism or national security risk, detecting

14  fraudulent travel documents or identifying individuals

15  who seek admission into the United States using

16  fraudulent schemes, detecting individuals engaging in

17  criminal activity such as human trafficking and alien

18  smuggling or smuggling illegal substances.

19         CBP also withheld specific operational plans

20  utilized at different ports of entry.  If those are

21  released, it would allow bad actors to work around CBP

22  efforts to stop them.  And it goes on in another

23  paragraph.

24         How more specific do you want them to be?

25         MS. KIM:  Your Honor, here the specificity

10

Proceedings

1  question is about which documents would actually contain

2  this information.  This language is essentially

3  meaningless because the declaration states that the

4  withholdings in general contain this information, but it

5  doesn't identify which specific documents include this

6  information.  And therefore, those descriptions fall

7  entirely untethered to any of the withholdings.  Nor are

8  those descriptions mapped onto the index at all.  So even

9  though the index might list at least the documents

10 withheld in full, the declaration doesn't identify which

11 of the documents withheld in full in the index also map

12 onto those descriptions.

13          We would also submit, your Honor, that in some

14 instances those descriptions may not necessarily meet the

15 reasonable specificity standard as the courts have

16 explained in the Exemption 7(E) context.  And again, I'd

17 like to return to the example of *Whitaker v. Department*

18 *of Justice* which is the District Court of D.C. case

19 that's been cited by CBP repeatedly in its own briefing.

20          There what's notable is that the court actually

21 rejected the agency's initial declaration as insufficient

22 but the declaration there was significantly more detailed

23 than the information that CBP has provided here.  And

24 there the court explained that again what the agency

25 needs to explain is exactly what procedures are at stake,

Proceedings

1    techniques and procedures, and how disclosure would

2    reveal them.  And there the agency explained that the

3    withheld material would disclose results from a specific

4    background check, the national agency check, and by

5    disclosing those results would reveal the information

6    that the FBI reviews when conducting the check and also

7    information that the FBI would consider relevant to the

8    check.  And the court there stated that it was still

9    unclear exactly what techniques and procedures were

10   disclosed by releasing those results and exactly how

11   disclosure would work.  Were the techniques and

12   procedures referenced directly by the withheld material

13   or were they implicitly revealed by revealing the

14   material?

15          And here, CBP has provided significantly less

16   information.  And in fact, in the declaration itself, the

17   language that your Honor mentioned again is not pinned to

18   any of the specific withholdings.  So even if that

19   language in and of itself could be reasonably specific,

20   it must still indicate which of the withholdings itself

21   contains that information.

22          One word note with respect to the declaration

23   and index, your Honor, is that even though the index and

24   the declaration address the documents withheld, even

25   though the index at least lists the documents withheld in

12

Proceedings

1  full, neither of the index nor the declaration at all the

2  partially withheld documents.  And CBP has argued that

3  there's no need to describe them or justify any of the

4  redactions contained within them because plaintiffs

5  actually have the documents.  But this was an argument

6  that was explicitly rejected by the Second Circuit in

7  *Halpern*.  There the court found that the agency's

8  declaration was deficient in part because there was no

9  contextual description either of the document subject to

10 redaction or the specific redactions made to the various

11 documents and it argued that the agency had to submit an

12 itemized description of the context of specific

13 redactions.  So CBP's failure to provide any description

14 or explanation of those documents also falls afoul of

15 *Halpern*.

16         I'd like your Honor now to turn to Exemption

17 7(E) and illustrate how the inadequacies of the

18 declaration and index just explained permeate analysis of

19 this specific exemption.  And I'd like to walk the Court

20 through two elements of CBP's burden in the Exemption

21 7(E) context.

22         First, the requirement that the withholdings

23 reveal techniques and procedures of guidelines.  And I

24 hope here perhaps to further buttress the response that I

25 provided to your question earlier.

13

Proceedings

1        And then second, I'd like to walk also through

2   CBP's burden of demonstrating that the disclosure of the

3   withholdings would risk circumvention of the law.

4        With respect to demonstrating that the

5   withholdings reveal techniques and procedures or

6   guidelines, CBP fails here because in many cases

7   throughout the index the agency simply repeats the

8   language of the exemption itself in describing the

9   withheld document.  And plaintiffs here would point the

10  Court to notable examples at documents 4, 16, 28, and 29

11  of the Vaughn Index.  In those examples, the agency

12  essentially says nothing more than the information would

13  reveal law enforcement techniques and procedures.  And

14  courts have established that this near verbatim

15  recitation of the statutory standard fails reasonable

16  specificity.

17       And again, I would point the Court to *Citizens*

18  *For Responsibility and Ethics in Washington*, the D.C.

19  Circuit case.  There the court rejected a similar

20  declaration by DOJ which simply stated that the withheld

21  material contained techniques and procedures used by the

22  FBI during the investigation.  And again in that case, as

23  mentioned, the D.C. Circuit explained that there are

24  really two elements that the agency must explain when

25  describing withheld information in the Exemption 7(E)

14

Proceedings

1   context.  Number one, what procedures are at stake and

2   number two, how disclosure could reveal such procedures.

3   And the examples that the court cited to there where the

4   agencies had submitted sufficient information were quite

5   instructive.

6            So in one example the court pointed to a case

7   where the FBI had properly withheld procedures which

8   describe the forensic examination of a computer.  And in

9   another example, the court provided the IRS had withheld

10  information related to settlement strategies, assessments

11  of litigating hazards, and acceptable ranges for

12  settlement.  And plaintiffs believe that those examples,

13  you know, set against those examples, CBP's near verbatim

14  recitation of the statutory standard across the

15  withholdings in the Vaughn Index clearly fails.

16           And while it's CBP's burden to establish that

17  the withholdings reveal techniques and procedures or

18  guidelines, plaintiff had pointed in their briefing to

19  several examples of withholdings where it does not appear

20  on the face of those withholdings that they would reveal

21  such techniques and procedures or guidelines.

22           And one example that plaintiffs would like to

23  point the Court to is document number 11 in the Vaughn

24  Index which is titled Culture and Religious Awareness

25  Class.  The purpose of this document is clearly to train

15

Proceedings

1   TTRT officers on their cultural and religious competency.

2   And there's really no obvious reason on the face of such

3   a document why this training material should reveal

4   techniques and procedures or guidelines.  And plaintiffs

5   would also like to note that CBP actually disclosed a

6   quite similar document in another litigation which it

7   cited repeatedly throughout its briefing.  That's

8   *American Immigration Lawyers Association v. DHS*, (D.D.C.

9   2020).  There the requestor sought disclosure of a CBP

10  reference manual detailing CBP policies and procedures.

11  And amongst the disclosures that CBP actually provided in

12  that litigation was a memo entitled Processing of

13  Passengers with Religious, Cultural, or Privacy

14  Considerations.  That memo obviously bears a striking

15  similarity to the document that plaintiffs have pointed

16  to here and undermines the argument that CBP should have

17  withheld this document in its entirety.

18          The briefing provides numerous other examples

19  where plaintiffs believe that on their face the documents

20  do not appear to reveal techniques and procedures or

21  guidelines.  Plaintiffs would point the Court to pages 15

22  to 19 of its brief in support of its motion for summary

23  judgment.  And significantly in the briefing, CBP has

24  offered no rebuttal whatsoever to these specific

25  examples.

16

Proceedings

1      In addition to demonstrating that the withheld

2  information must reveal techniques and procedures or

3  guidelines, CBP must, but also fails to establish that

4  disclosing the withheld information would risk

5  circumvention of the law which is the standard CBP

6  concedes must apply across all of its Exemption 7(E)

7  withholdings because it has failed to differentiate

8  between techniques and procedures and guidelines.

9      And as noted earlier in the discussion

10 regarding CBP's use of identical boilerplate language for

11 every single withholding, plaintiffs noted that courts

12 have specifically rejected the boilerplate that CBP

13 offers as insufficient in the Exemption 7(E) context to

14 demonstrate that disclosure would risk circumvention of

15 the law.  And I believe I pointed the Court there to *ACLU*

16 *v. ODNI* (SDNY 2011) where the FBI provided a nearly

17 identical justification for withholding material under

18 Exemption 7(E), namely that disclosure would enable

19 individuals to develop countermeasures.  And the Court

20 described that as a generic assertion and boilerplate

21 insufficient to carry the agency's burden.

22      Again, while it's CBP's burden to establish the

23 risk of circumvention of the law, in their briefing

24 plaintiffs have also cited to several examples of

25 withholdings where it's also clear on their face that

17

Proceedings

1   disclosure would not entail such risks.  And here the

2   plaintiffs would point the Court to the example of

3   document number five entitled TTRT Officer Reference Job

4   Aid 2020 which appears to be a reference manual for TTRT

5   officers.  And plaintiff's believe that disclosure would

6   not risk circumvention of the law is compellingly

7   demonstrated by CBP's disclosure of substantial portions

8   of an analogous reference manual.  Again, in *American*

9   *Immigration Lawyers Association v. DHS*, a case repeatedly

10  cited by CBP in its own briefing, there the requestor

11  sought what was called an officer's reference tool which

12  are described as a comprehensive how-to manual detailing

13  CBP policies and procedures.  And over the course of that

14  litigation, CBP ended up producing approximately 400

15  documents consisting of memos and mustards and standard

16  operating procedures.

17          And what's notable here is that many of those

18  documents seem to have included interpretation or

19  application of the laws and regulations governing CBP

20  activities as would be reasonable for a reference manual.

21  And the disclosure of that kind of information is

22  consistent with findings by courts that such descriptions

23  of laws and regulations governing CBP activities cannot

24  be subject to Exemption 7(E).  And here the plaintiffs

25  would point the Court, as an example, to *Knight First*

18

Proceedings

1 *Amendment Institute v. DHS* (SDNY 2019) where the
2 requestor also sought similarly a reference manual.
3 There are sections of the State Foreign Affairs Manual
4 relating to how to enforce the grounds for admissibility
5 including situations that might trigger a check for
6 terrorism related ineligibilities.  And the court there
7 said that that information had to be disclosed because it
8 included the interpretation and application of laws and
9 regulations, and that's just not protected under
10 Exemption 7(E).  And it also specifically rejected the
11 argument that bad actors could use this information to
12 circumvent security checks to enter the U.S. and noted
13 that it was unclear how revealing the grounds for
14 admissibility could help circumvention of the law.
15         And here at the document, going back to the
16 document which I pointed the Court two, number 5, TTRT
17 Officer Reference Job Aid, this document is also clearly
18 a reference manual.  We believe on that basis it's also
19 likely to contain interpretation and application of laws
20 and regulations.  And the fact that CBP has already
21 disclosed substantial portions of an analogous reference
22 manual seems to suggest that this manual also is not
23 reasonably subject to Exemption 7(E).
24         Again, plaintiffs have provided in their
25 briefing numerous other examples of documents and

Proceedings

1   information withheld where it seems clear that their

2   disclosure would not risk circumvention of the law and

3   that's contained in pages 19 to 21 of plaintiff's brief

4   in support of its motion for summary judgment.  Again

5   significantly, CBP has offered no rebuttal to those

6   specific examples.

7           I'd like to conclude by offering plaintiff's

8   view on how we believe the Court should respond to CBP's

9   failures at summary judgment.

10          The law is clear at summary judgment the agency

11  bears the burden of demonstrating that its withholdings

12  fall within the claimed exemptions.  Neither the

13  declaration or the index address the withholdings with

14  the specificity required by law.  Nevertheless, the

15  agency has defended that declaration and index over six

16  months of briefing.  And the legal consequence of the

17  agency's failure should be for it to disclose the

18  withholdings.  And we would respectfully request the

19  Court order CBP to do so.

20          However, if the Court is not prepared to order

21  disclosure of the challenged withholdings at this stage,

22  plaintiffs submit that the most efficient and effective

23  alternative would be for the Court to review the

24  withholdings in camera.  Upon such review, the Court may

25  be able to order the disclosure, the challenged

Proceedings

1    withholdings and order their disclosure in its entirety

2    with full confidence.  It may also be able to identify

3    specific questions to pose to CBP to address, or it may

4    wish to order CBP to conduct a reasonable segregability

5    analysis across all or some portion of the withholdings.

6            Plaintiffs submit that the Court would know

7    which avenue is most appropriate by looking directly at

8    the documents.  And if it were to, for example, permit

9    CBP to submit further declaration or further information

10   at this stage without directly looking at the documents

11   in camera, the parties could easily return in a few

12   months litigating the same issues with marginally more

13   information.

14           So plaintiffs submit that even though we

15   believe that the legal consequence of CBP's failure

16   should be for it to disclose the challenged withholdings

17   in their entirety, it would be most efficient for the

18   Court, if it's unprepared to do so at this stage, to look

19   directly at the documents in camera as that would ensure

20   and guarantee some progress in the litigation at this

21   stage.  Thank you, your Honor.

22           THE COURT:  Ms. Mahoney, would you like to

23   respond?

24           MS. MAHONEY:  Yes, just briefly, your Honor.

25           One thing we're sort of losing a little focus

21

Proceedings

1  of here is what exactly the tactical terrorism response

2  teams do.  They're specially trained in counterterrorism

3  response.  They're responsible for examining travelers

4  who want to enter the United States to make sure our

5  borders remain safe.  They work with information

6  available in the terrorist screening database and other

7  information as provided to them by analysts, information

8  and techniques they have garnered through their training

9  and their experience.

10          The documents that plaintiffs are seeking are

11  essentially -- well initially they wanted pretty much

12  everything about the tactical terrorism response teams.

13  Now they're looking -- you know, these documents,

14  although they're claiming they're not identified on the

15  Vaughn index, there is a description.  And I guess maybe

16  I've been in government too long because I can glean what

17  these documents are fairly easily, they're about

18  training.  They're data.  They're records concerning

19  targeting.  And the agency's declaration made clear the

20  harms that would be encountered if this kind of

21  information is made public.  It's going to totally thwart

22  the tactical terrorism response teams and CBP itself from

23  effectuating its operational needs and it's operations

24  that it needs to carry out in order to protect the

25  borders of this country.

22

Proceedings

1      And I disagree with counsel that these

2  submissions by the government are insufficient.  And

3  again, maybe I've been in government too long being able

4  to say well, reading that this is a training, reading

5  that it's a PowerPoint, seeing what it is with regard to

6  the redacted documents tells me what's in the markings up

7  as to what the exemptions are tells me what's there.

8  Tells me, well not the specifics of it because again, we

9  have to work a very very fine line between disclosing

10  this information and keeping it protected.  And counsel

11  may not like the fact that in their opinion insufficient

12  information has been given.  The government does not

13  agree.  The government has been as careful as it could be

14  to describe what these materials are, what the harms

15  would be.  And there's five different categories of types

16  of information.  Your Honor read off the most important

17  one about the law enforcement methods for inspecting

18  travelers at port of entry.  And each of those concerns

19  and each of those activities should be protected.

20      The information relating to targeting also

21  relates to that.  There's a couple of the others go with

22  the systems that are used by CBP for tracking information

23  and databases and I think we all know with recent

24  incidents how important it is to protect our government

25  databases to the extent possible and to keep them from

23

Proceedings

1   any hackers, not just people who are looking to thwart

2   CBP's mission.

3        CBP has said from the beginning that if your

4   Honor wants to see the materials, they would like to

5   produce them.  If your Honor wants more information in a

6   more detailed declaration that can't be made public, they

7   would like to submit something.  But we would say that we

8   believe that on papers that have been submitted, CBP has

9   met its burden showing that the materials that were

10  withheld are protected under Exemption 7(E).

11       THE COURT:  Okay.  Ms. Kim, do you have

12  anything else?

13       MS. KIM:  Yes, your Honor.  I'd just like to

14  briefly respond to several of the points made by

15  government's counsel.

16       First, I think the government relies a lot on

17  what we would admit is scary language, the use of the

18  word terrorism in the tactical terrorism response team's

19  title, the fact that CBP is a law enforcement agency that

20  works to help secure our borders.

21       But first of all, I think that throwing those

22  words around, while it's scary, that language is belied a

23  bit by what we actually know about TTRTs which is that

24  they target travelers from whom they have no pre-existing

25  suspicion or underlying factual basis to believe they

24

Proceedings

1    pose a security threat.

2              But in addition, I'd like to emphasize again

3    that it's not enough that CBP is a law enforcement agency

4    or that the specific unit has terrorism in the title.

5    The label of the unit, the label of the agency is not

6    enough to exempt information.  What the Court must do is

7    look to the substance of the specific withholdings and

8    explain why those specific withholdings fall within the

9    exemptions.  And I think it's notable here, your Honor,

10   that again the government falls back on these broad

11   categories in its declaration which as mentioned are not

12   tied to any of the specific withholdings at all nor are

13   they mapped in any way to the index which in any event on

14   its own is not enough to sufficiently describe the

15   withholdings or to sufficiently justify them.

16             And again also in describing the documents,

17   your Honor, the government states in some cases that

18   their training materials are PowerPoints.  I mean those

19   descriptions in and of themselves clearly fail to

20   demonstrate that the withholdings fall into the specific

21   exemption that the government has claimed where it must

22   demonstrate with reasonable specificity that the

23   documents are either techniques and procedures or

24   guidelines and that they would risk circumvention of the

25   law.

25

Proceedings

1      THE COURT:  So what if they would submit a

2  revised Vaughn Index that said that this PowerPoint, I

3  don't know which document it is on the Vaughn Index,

4  contains law enforcement techniques, training and all of

5  the other buzzwords.  That still wouldn't be enough for

6  the plaintiffs.

7            MS. KIM:  I think your --

8            THE COURT:  You would want them to explain

9  exactly what techniques and things like that.  Correct?

10           MS. KIM:  Your Honor, yes.  I think --

11           THE COURT:  Thereby disclosing protected

12  information.

13           MS. KIM:  I think, your Honor, there are myriad

14  examples where both CBP and other agencies have provided

15  enough information to give the Court a sense, and the

16  requestor a sense of what techniques and procedures are

17  at stake without revealing the sensitive nature, or the

18  purported sensitive nature, of the techniques and

19  procedures.

20           And just as one example, your Honor, I would

21  cite the case of *Bishop v. Department of Homeland

22  Security* which is a case that CBP actually cited in its

23  briefing.  CBP contends, for example, that it's enough to

24  say that the information would reveal internal CBP

25  databases and codes.  In *Bishop v. Department of Homeland*

26

Proceedings

1    *Security*, there the agency actually redacted the data

2    fields resulting from the searches of specific passengers

3    on the CBP text and automated targeting system databases.

4    I think what's notable in that case was the agency had no

5    qualms whatsoever identifying specific systems it was

6    using noting the type of information that it was refusing

7    to disclose.  And finally, the agency understood that it

8    could only redact some of that information.  It couldn't

9    withhold the material in its entirety.

10             I think that gives you an example, your Honor,

11   of the type of specificity that the agency can strive for

12   and has obviously failed to do so here without revealing

13   the sensitive nature, or the purported sensitive nature

14   of the techniques and procedures at issue.

15             THE COURT:  Okay.

16             MS. KIM:  No, your Honor, I was actually going

17   to cite the case of *Bishop v. DHS* in rebuttal just as an

18   example of the type of specificity that the agency has

19   obviously failed to meet here.

20             I think, sorry, my apologies, your Honor, I

21   don't I answered your question about -- there was a

22   portion of your question about why you couldn't simply

23   ask the agency to submit an additional Vaughn Index.  And

24   plaintiffs would note that practically speaking, if the

25   Court were simply to order CBP to submit a new

27

Proceedings

1  declaration or a new Vaughn Index, again we could easily

2  return in a few months litigating the same issues with

3  marginally more information.  And as noted we believe it

4  will be most efficient and effective for the Court to

5  simply review the withholdings in camera as an

6  alternative to having CBP submit further information.

7          And we would also argue that this makes sense

8  on principle because FOIA does not contemplate that CBP

9  can submit any declaration no matter how vague or

10  conclusory and that the Court will automatically grant it

11  a second bite at the apple especially after it's had the

12  benefit of seeing plaintiff's arguments in the briefing.

13  This would produce an unsustainable tension with the

14  agency's burden at summary judgment.  It would also be

15  fundamentally unfair that CBP's failure should work to

16  its own advantage after having seen all the arguments to

17  then be able to craft its declaration and index in

18  response to those arguments.

19          And finally, it would incentivize the agencies

20  to drag out litigation if they were simply allowed to put

21  in any type of declaration whatsoever and know that the

22  courts would essentially allow them to submit another

23  declaration.  And here specifically the submission of

24  more information really comes much too late to be

25  justifiable.  Plaintiffs identified the challenged

28

Proceedings

1    withholdings last August.  The agency has defended the

2    declaration and index over six months of briefing and has

3    had numerous opportunities to sufficiently address the

4    withholdings including if it wanted to by submitting

5    additional information in opposition to plaintiff's

6    motion for summary judgment.

7                THE COURT:  Give me one second.

8                      (Pause in proceedings)

9                THE COURT:  So you want me to look at 850 pages

10   of documents.  That's what you want me to do.  And figure

11   it out myself.

12               MS. KIM:  Your Honor, we did anticipate that it

13   might make sense to point to a representative sample

14   where the Court could focus at least its initial

15   attention.  And that representative sample that we would

16   point to would be documents number 5, 11, 28, and 30 of

17   the Vaughn Index.  And amongst the partially redacted

18   documents, a PowerPoint presentation located at pages 43

19   to 61 of Exhibit H of CBP's declaration.

20               THE COURT:  What was that again?

21               MS. KIM:  Pages 43 to 61.

22               THE COURT:  Hold on.

23               MS. KIM:  My apologies, your Honor.  Should I

24   begin with the documents withheld in full?

25               THE COURT:  5, 11, 28, and 30.

Proceedings

1      MS. KIM:  Yes, your Honor.

2      THE COURT:  Correct?  Then what's the

3 PowerPoint?

4      MS. KIM:  At pages 43 to 61 of Exhibit H of the

5 CBP declaration.

6      THE COURT:  Ms. Mahoney, are there any -- so I

7 don't have to look at 850 pages of documents, are there

8 any in particular that the government would like me to

9 focus on to see if the declaration and the Vaughn index

10 are sufficient?

11      MS. MAHONEY:  I don't know, your Honor.  I

12 wasn't looking at this with that eye.  I can ask and

13 consult with CBP if you'd like.  You know, we would not

14 say everything else.

15      THE COURT:  I would hope not.  Why don't you do

16 that and by the end of this week let me know which

17 documents it is you want me to look at and focus on.  I

18 will take an in camera review of them and what the

19 plaintiffs have cited to and make my conclusion.

20      I will ask you, Ms. Mahoney, to provide paper

21 copies of the documents.  I don't want to look at them on

22 my computer.  All right?  Both paper copies -- obviously

23 you're the one with the documents so you have to give me

24 everything.  And you can follow up with the documents

25 themselves by the following Wednesday.  And if you want

30

Proceedings

1   to arrange to have them handed to me, we can do that as

2   well.

3            MS. MAHONEY:  Okay.

4            THE COURT:  All right?  And I'll reserve

5   decision.

6            MS. KIM:  Thank you, your Honor.

7            THE COURT:  Okay?  Anything else?

8            MS. KIM:  No, your Honor.

9            THE COURT:  All right.  Thank you.

10           MS. KIM:  Thank you.

11                     (Matter concluded)

12                         -oOo-

13

14

15

16

17

18

19

20

21

22

23

24

25

31

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **21st** day of **March**, 2022.

*Mary Greco*

Transcriptions Plus II, Inc.