UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————

№ 19-CV-7079 (RER)

———————————————

CLEAR, ET AL.

VERSUS

UNITED STATES CUSTOMS AND BORDER PROTECTION

———————————————

**MEMORANDUM & ORDER**

November 2, 2022

———————————————

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Creating Law Enforcement Accountability and Responsibility Project at the City University of New York School of Law ("CLEAR"), together with the American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "Plaintiffs"), commenced this action against United States Customs and Border Protection ("CBP" or "Defendant") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, to seek the release of records related to CBP's Tactical Terrorism Response Teams ("TTRTs"). (ECF No. 1 ("Compl.")). Currently before the Court is Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment and Opposition. (ECF Nos. 32, 41). For the reasons set forth herein, both motions are granted in part and denied in part, and the Court reserves judgment in part.

1

# BACKGROUND

## I.     FOIA Request

In November 2019, Plaintiffs submitted their FOIA request to CBP seeking ten categories and subcategories of agency records pertaining to the policies and conduct of TTRTs. (ECF No. 1-1, Ex. A ("FOIA Request") at 4–5).[1] TTRT officers are trained in counterterrorism response and examine travelers identified within the U.S. Government's Terrorist Screening Database and others who arrive at ports of entry into the United States. (ECF No. 33 ("Def.'s 56.1") ¶ 2; ECF No. 42 ("Pls.' 56.1") ¶ 2). Plaintiffs sought records addressing formal and informal TTRT guidance, including how TTRTs target travelers for interview or inspection; TTRT training and course materials; formal and informal reports and other assessments of TTRT effectiveness; and, data related to individuals whom TTRTs targeted for interview or inspection, denied entry, or nominated to a watchlist since January 1, 2017. (Compl. ¶ 27; FOIA Request at 4–5). With this request, Plaintiffs aimed to "inform the public about how TTRTs operate and what, if any, safeguards are in place to prevent abuse and protect individuals' rights." (Compl. ¶ 4).

## II.     Procedural History

Plaintiffs commenced this action in December 2019, after CBP failed to respond within the statutory timeframe (*id.*), asking the Court, *inter alia*, to order CBP to immediately process and release all responsive records. (Compl. at 9). A few months later, the parties agreed to a schedule for the search, processing, and production of records in response to Plaintiffs' FOIA request. (*See* ECF No. 17; Order dated 4/20/2020). Pursuant to this schedule, between March and August 2020, CBP produced approximately 1,726 pages of responsive records. (Def.'s 56.1 ¶¶ 7–9, 11–12; Pls.' 56.1 ¶¶ 7–9, 11–12). These were comprised of 875 pages that were released in full or in part,

---

[1] Pinpoint citations to case documents refer to the page numbers appearing in the ECF header.

(Def.'s 56.1 ¶¶ 7–9, 11–12; Pls.' 56.1 ¶¶ 7–9, 11–12), and 851 pages—or 32 documents—that were withheld in full. (Def.'s 56.1 ¶¶ 8–9, 13; Pls.' 56.1 ¶¶ 8–9, 13). CBP withheld this information under five FOIA Exemptions: 5 U.S.C. §§ 552(b)(3), (5), (6), (7)(C), and (7)(E). (Def.'s 56.1 ¶¶ 7–9, 11–13; Pls.' 56.1 ¶¶ 7–9, 11–13). To justify these withholdings, CBP provided Plaintiffs with a *Vaughn* index, which briefly described the 32 fully withheld documents, the asserted FOIA exemptions to justify each record's withholding, and the basis for claiming these exemptions. (Def.'s 56.1 ¶ 13; Pls.' 56.1 ¶ 13; *see* ECF No. 39-3 ("*Vaughn* Index")).

Shortly thereafter, the parties filed their fully briefed cross-motions for summary judgment. (*See* ECF Nos. 32–46).[2] Plaintiffs only dispute a subset of the withholdings under 5 U.S.C. §§ 552(b)(3) ("Exemption 3") and 5 U.S.C. §§ 552(b)(7)(E) ("Exemption 7(E)"). (ECF No. 43 ("Pls.' Mem.") at 11–13). These challenged withholdings include sixteen documents that CBP withheld in full[3] and thirteen documents that it released in redacted form.[4] (*See id.*).

With respect to these twenty-nine documents, CBP moved for summary judgment on the grounds that it properly asserted Exemptions 3 and 7(E) and did not improperly withhold responsive records. (ECF No. 34 ("Def.'s Mem.") at 11). CBP also argues that its asserted exemptions were adequately addressed in the *Vaughn* index and the declaration of Patrick Howard,

---

[2] The parties consented to the disposition of this case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 24; Order dated 8/31/2020).

[3] *See Vaughn* Index, Nos. 1 ("Encounters at Ports of Entry Identify Individuals with Potential Links to International Terrorism"), 4 ("Tactical Terrorism Response Team Curriculum v2"), 5 ("TTRT Officer Reference Job Aid 2020"), 9 ("2.CTD TTRT101"), 10 ("Map of TTRT Locations"), 11 ("Culture and Religious Awareness Class"), 14 ("CND 101_20200205"), 15 ("CTD 10 TTRT Orientation 20200304"), 16 ("Memorandum – Importance of Targeting Rules"), 18 ("Muster – Updated Guidance [redacted]"), 19 ("Nomination Referrals"), 27 ("TOC Watchlisting Overview"), 28 ("TTP_[redacted] Presentation"), 29 ("TTRT [redacted] SOP [redacted] BSI 2018"), 30 ("TTRT [redacted] Accomplishments"), and 32 ("Enhanced Communication Course").

[4] *See* ECF No. 35-4 ("Howard Decl. Ex. D") at 10–11, 12–16; ECF No. 36-2 ("Howard Decl. Ex. F") at 1–3, 4–7, 8; ECF No. 36-4 ("Howard Decl. Ex. H") at 7–19, 20, 22–30, 32–35, 40–42, 43–61, 62–80, 86–93.

Branch Chief in the CBP FOIA Division. (ECF No. 45 ("Def.'s Supp. Mem.") at 7–9; *see generally* ECF No. 35, Declaration of Patrick Howard ("Howard Decl.")). In their cross-motion, Plaintiffs counter that CBP's declaration and *Vaughn* index are inadequate to justify the withholdings; CBP has not justified its withholdings under Exemption 7(E) or Exemption 3; and, CBP failed to release all segregable and non-exempt information. (Pls.' Mem. at 8–9).

Following oral argument, the Court exercised its discretion to conduct *in camera* review of a representative sample of challenged documents to evaluate the sufficiency of the *Vaughn* index and Howard declaration as they relate to CBP's exemption claims. (ECF Nos. 52, 53 at 29).[5] Each party identified five documents to form part of this sample.[6] (ECF Nos. 52). This sample totaled 170 pages that were fully withheld and eighteen pages that were partially withheld, or approximately twenty percent of all fully withheld documents and two percent of partially withheld documents.[7] The Court subsequently granted in part and denied in part the parties' cross-motions for summary judgment. (Order dated 3/31/2022). This is the written decision that corresponds to that Order.

---

[5] The Second Circuit allows *in camera* review when "the record showed the reasons for withholding were vague or where the claims to withhold were too sweeping or . . . where it might be possible that the agency had exempted whole documents simply because there was some exempt material in them." *Halpern v. FBI*, 181 F.3d 279, 292 (2d Cir. 1999).

[6] The ten documents that the parties identified for *in camera* review include: *Vaughn* Index, Nos. 5, 11, 15, 16, 18, 19, 27, 28, and 30; and Howard Decl. Ex. H at 43–61.

[7] *See Meeropol v. Meese*, 790 F.2d 942, 958–59 (D.C. Cir. 1986) (holding that *in camera* review of one percent of withheld documents sufficed to determine whether claimed exemption was appropriate).

**LEGAL STANDARD**

I.   <u>FOIA</u>

The FOIA "was designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009) (quoting *Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976)). The FOIA requires government agencies to disclose agency records unless those records fall under an enumerated exemption. *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just.*, 697 F.3d 184, 194 (2d Cir. 2012). When withholding records, "[an] agency bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014); *see also Am. Oversight v. U.S. Dep't of Just.*, 45 F.4th 579, 587 (2d Cir. 2022). When withholding an entire document, the agency claiming an exemption is also required to "demonstrate that it cannot segregate the exempt material from the non-exempt and disclose as much as possible." *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003); *see also* 5 U.S.C. § 552(b). The Court reviews *de novo* an agency's withholding of information requested under FOIA. 5 U.S.C. § 552(a)(4)(B); *Florez v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016).

II.   <u>Summary Judgment</u>

FOIA actions are generally resolved through motions for summary judgment. *Mermerlstein v. U.S. Dep't of Just., FBI*, No. 19-CV-00312 (GRB) (JMW), 2021 WL 3455314, at *4 (E.D.N.Y. Aug. 4, 2021). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to material fact exists when a factfinder could reasonably return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In a FOIA case, whether a district court may grant summary judgment depends on whether a defending

5

agency establishes "that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment may be granted in favor of an agency "on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (emphasis in original) (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)).

If an agency's explanations are inadequate for a district court to determine whether exemptions are validly claimed, the court may inspect the documents *in camera,* request amended or supplemental indexes and affidavits, or grant the plaintiff discovery. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998). Indeed, trial courts have "broad discretion" in deciding to conduct *in camera* review. *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996). Additionally, courts routinely direct agencies to revise their *Vaughn* index when they prove inadequate. *See, e.g.*, *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 811 F. Supp. 2d 713, 732 (S.D.N.Y. 2011) (ordering agency to submit revised *Vaughn* index following *in camera* review of withheld documents), *amended on reconsideration* (Aug. 8, 2011); *ACLU v. U.S. Dep't of Just.*, 210 F. Supp. 3d 467, 483, 485–86 (S.D.N.Y. 2016) (directing agency to revise *Vaughn* submission and provide additional support for claimed exemption); *Pub. Emps. for Env't Resp. v. EPA*, 213 F. Supp. 3d 1, 10–11 (D.D.C. 2016) (directing agency to revise inadequate *Vaughn* index before deciding whether material was properly withheld).

## DISCUSSION

The parties' cross-motions for summary judgment raise three issues. First, whether CBP's declaration and *Vaughn* index adequately support its withholdings and redactions. Second, whether CBP properly withheld information under Exemptions 3 and 7(E). And third, whether CBP established that it segregated and released non-exempt portions of each record.

I.  The Declaration and Vaughn Index Do Not Adequately Support CBP's Withholdings and Redactions

The burden to establish that a FOIA exemption protects information from disclosure sits squarely with the agency seeking to withhold responsive records. *Am. Oversight*, 45 F.4th at 587. To meet this burden, the agency must "describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure" and "show that the information logically falls within the claimed exemption." *Halpern*, 181 F.3d at 291 (quoting *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 481 (D.C. Cir. 1980)). Agencies generally satisfy this requirement through a declaration and *Vaughn* index. *See Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 256–57 (D.D.C. 2004). A *Vaughn* index typically describes each fully withheld or redacted document and provides an explanation to justify nondisclosure. *Id.*; *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). This level of detail allows the *Vaughn* index to serve its primary functions: "permit adequate adversary testing of the agency's claimed right to an exemption, and enable [courts] to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves." *King v. U.S. Dep't of Just.*, 830 F.2d 210, 218–19 (D.C. Cir. 1987) (citations and quotations omitted). To this end, for both the *Vaughn* index and any supporting declaration, "[s]pecificity is the defining requirement." *Id.* at 219.

A legally sufficient declaration and *Vaughn* index provide "'a relatively detailed analysis [of the withheld material] in manageable segments' without resort to 'conclusory and generalized allegations of exemptions.'" *Halpern*, 181 F.3d at 290 (quoting *Vaughn*, 484 F. 2d at 826). Claims that are conclusory, vague, sweeping, or simply recite statutory standards do not suffice to justify withholdings and redactions. *Quiñon*, 86 F.3d at 1227. Categorical descriptions of the withheld material or the consequences of its disclosure are likewise inadequate. *King*, 830 F.2d at 224. Instead, withholding agencies must "specifically identify[] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Id.*; *see also Halpern*, 181 F.3d at 293 (finding a "vague and conclusory affidavit" insufficient and agreeing with First, Third, Ninth, and D.C. Circuit rejections of "categorical" and "boilerplate" explanations of withholdings and claimed exemptions); *Neuman v. United States*, 70 F. Supp. 3d 416, 425 (D.D.C. 2014) ("[I]t is not enough to copy and paste the same boilerplate language each time [an] exemption is invoked[.]"); *Pub. Emps. for Env't Resp. v. Off. of Sci. & Tech. Pol'y*, 825 F. Supp. 2d 104, 111 (D.D.C. 2011) (finding legally insufficient support when agency "did nothing more than copy and paste circular justifications throughout its . . . *Vaughn* index"). Consequently, courts apply a good faith presumption to agency declarations only when they offer "reasonably detailed explanations why any withheld documents fall within an exemption." *Florez*, 829 F.3d at 182.

Here, the parties disagree about whether CBP's *Vaughn* index and declaration adequately describe and justify its withholdings. CBP contends that it has adequately supported its withholdings and "that disclosing more specific details . . . would defeat the purposes of the asserted FOIA exemptions." (Def.'s Supp. Mem. at 8). Plaintiffs, on the other hand, claim that CBP's declaration is inadequate "because it contains only broad, boilerplate assertions, rather than

engaging with the specific withholdings." (Pls.' Mem. at 8). Plaintiffs further argue that CBP's *Vaughn* index relies on "vague and conclusory statements," fails to logically explain how CBP's asserted exemptions apply to its withholdings, and says nothing about redacted documents. (*Id.* at 17). Plaintiffs' challenges are well taken.

Neither the categorical descriptions nor the boilerplate justifications in CBP's declaration and *Vaughn* index provide the reasonable specificity that the Court needs to engage in effective review.

In its declaration, after acknowledging that it would not provide "an all-inclusive rendering of all withheld information" (Howard Decl. ¶ 43), CBP instead describes five broad categories of information that it withheld across all documents: (1) codes and functionalities of CBP systems; (2) training materials for users of CBP systems; (3) email addresses of group listserves; (4) law enforcement methods for inspecting travelers at ports of entry; and (5) information related to targeting. (*Id.* ¶ 45). But CBP's categorical descriptions fail to engage with any of the specific records or withholdings. Although the declaration notes that "[a] large number" of the fully withheld documents fall into the fourth and fifth categories, it does not link any of the five categories to the specific records that CBP withheld. (*Id.* ¶ 46).

Meanwhile, the *Vaughn* index does not refer to the five categories at all, and instead "merely repeats the language of the exemption and uses a string of generic words to describe a document." (Pls.' Mem. at 17). To illustrate, Plaintiffs point to six different records that are all described as pertaining to "law enforcement techniques and procedures, including information related to how CBP addresses certain threats." (*Id.*; *see Vaughn* Index Nos. 13, 16–19, 27–29). Also troubling is that the descriptions offered for two of these documents are completely identical. (*See Vaughn* Index Nos. 28, 29). These generalized descriptions undermine Plaintiffs' ability to meaningfully

challenge the withholding of any specific records, as reflected in Plaintiffs' conclusion that the document titled "TTP_[redacted] Presentation" must relate to the Department of Homeland Security's Trusted Traveler Programs[8] and therefore lack a "rational relationship to any law enforcement purpose." (Pls.' Mem. at 21; *Vaughn* Index No. 28). Although *in camera* review confirmed that Plaintiffs' inference was incorrect—the document does not relate to the Trusted Traveler Program—their conjecture was nonetheless reasonable, given the vagueness of details offered by CBP to describe the withheld content.

CBP's *Vaughn* index and declaration likewise resort to categorical and boilerplate justifications for withholding information, falling short of the specificity required to explain how asserted exemptions apply to specific withholdings. For example, although the documents in dispute vary widely—ranging from a one-page map to a 377-page Enhanced Communication Course—the *Vaughn* index uses the same categorical and catch-all justifications, copied and pasted, for nearly every document CBP withheld in full:

> Disclosure of law enforcement techniques and procedures . . . would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate *other countermeasures*, thereby corrupting the integrity of ongoing operations.

(*See Vaughn* Index Nos. 1–19, 27–29, 32) (emphasis added). The remaining documents likewise rely on a vague and boilerplate description:

> Exemption (b)(7)(E) has been applied to information compiled for law enforcement purposes and operation details, target activity, location(s), techniques, and objectives which the Agency considers law enforcement sensitive information, which if known could assist those illicit actors seeking to avoid detection. This information is not generally known or publicly disclosed. Disclosure of this

---

[8] *See Trusted Traveler Programs*, U.S. Dep't Homeland Sec., https://ttp.dhs.gov (last visited October 11, 2022) (describing Trusted Traveler Programs as allowing travelers "to use expedited lanes at the U.S. airports, and when crossing international borders").

> information would reveal both law enforcement techniques and internal Agency procedure which would interfere with enforcement proceedings.

(*See Vaughn* Index Nos. 20–26). These entries lack the particularized analysis needed to allow Plaintiffs and the Court to intelligently and meaningfully weigh the propriety of claimed exemptions. The declaration proceeds in a similar fashion, painting with a broad brush to justify withholding all material that falls within five categories of information, rather than correlating justifications for invoking an exemption to specific withholdings. (*See* Howard Decl. ¶¶ 44–49).

Notably absent from CBP's *Vaughn* index is any description of the records that were withheld in part, leaving Plaintiffs and the Court to guess the nature of the redacted content through context clues. (*See* Def.'s Supp. Mem. at 8). Despite CBP's suggestion that Plaintiffs "should not require 'contextual descriptions' of [redactions]" (*id.*), the Second Circuit has made clear that an agency seeking to withhold information must provide a reasonably specific description of both the information withheld *and* the context from which the information was deleted. *See Halpern*, 181 F.3d at 293–94. The silence on redactions is especially problematic in instances when CBP withheld more information than it disclosed, and Plaintiffs and the Court are forced to evaluate the validity of a FOIA exemption claim based solely on a blacked-out page. In one striking example, an eighteen-page record is almost entirely redacted, without explanation in the declaration or *Vaughn* index as to the information that was withheld or the justification for its withholding, and without context from which to draw an informed conclusion. (*See* Howard Decl. Ex. H at 62–80). Without more information, the Court cannot conduct the necessary *de novo* review to evaluate whether redacted information was properly withheld.

To be sure, CBP must "walk a fine line" to avoid revealing the specific information that qualifies for a FOIA exemption. *Am. Immigr. Laws. Assoc. v. U.S. Dep't of Homeland Sec.*, 485

11

F. Supp. 3d 100, 108 (D.D.C. 2020). This Court recognizes that national security concerns could be at stake by disclosing details of the government's counterterrorism efforts. This is precisely why CBP must provide reasonably specific information and justifications in its *Vaughn* index and declaration, rather than delegate these decisions to the Court through *in camera* review. However, by describing only broad categories of withheld information and failing to justify nondisclosure of each specific record, CBP failed to meet its burden of showing that a FOIA exemption applies to each of its withholdings.

Accordingly, CBP is ordered to amend or supplement its declaration and *Vaughn* index to adequately describe and justify the information it withheld. *See Intell. Prop. Watch v. U.S. Trade Representative*, 134 F. Supp. 3d 726, 747 (S.D.N.Y. 2015) (requiring "supplemental affidavits, declarations, and/or *Vaughn* indices in order to provide 'a sufficient degree of detail' as to withholdings and redactions"); *ACLU v. Off. of the Dir. of Nat'l Intel.*, No. 10 Civ. 4419 (RJS), 2011 WL 5563520, at *13 (S.D.N.Y. Nov. 15, 2011) (ordering supplemental submissions where "faced with conclusory or otherwise insufficient agency affidavits"). While a document-by-document or page-by-page description of withheld materials is not required, this Court would welcome such specificity. *King*, 830 F.2d at 223–24 ("A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."); *Jud. Watch, Inc.*, 297 F. Supp. 2d at 257 ("[A]s a purely practical matter, document-by-document justification will usually be necessary[.]").

II.     Although Documents Reviewed *In Camera* Fall Within Exemption 7(E), CBP's *Vaughn* Index and Declaration Are Insufficient to Establish Whether Remaining Records Were Properly Withheld Under Exemptions 3 and 7(E)

Given the current record, the Court reserves judgment on whether withholdings were proper under Exemptions 3 and 7(E) with respect to the documents that were not reviewed *in camera* but makes individual findings for those documents it had the opportunity to inspect.

A.     FOIA Exemption 3

Exemption 3 authorizes an agency to withhold or redact records when they are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). CBP claimed Exemption 3 by invoking Section 102A(i)(1) of the National Security Act (as amended by the Intelligence Reform and Terrorism Prevention Act of 2004), 50 U.S.C. § 3024(i) ("Section 3024(i)") to withhold part of one document, "Watchlisting Reference Guide." (Howard Decl. ¶ 51; *see also* Howard Decl. Ex. H at 86–93). Plaintiffs raise three challenges to CBP's Exemption 3 claim, but the Court need only consider one: whether the withheld information satisfies the criteria of the exemption statute. (Pls.' Mem. at 30–31).[9]

---

[9] Plaintiffs also argue that the official acknowledgement doctrine bars CBP from claiming a FOIA exemption to avoid disclosing the information in this document and that, as a non-intelligence agency, CBP lacks the authority to invoke Section 3024(i). However, the Court reserves judgment on these challenges until CBP establishes that the information it redacted in the "Watchlisting Reference Guide" is consistent with the criteria outlined in Section 3024(i)—which, so far, it has failed to do.

The official acknowledgment doctrine waives an agency's right to claim an exemption to withhold information when they have officially acknowledged and disclosed the same information. *N.Y. Times v. CIA*, 965 F.3d 109, 115–16 (2d Cir. 2020). An agency has officially disclosed classified information when the information "'(1) [is] as specific as the information previously released,' (2) 'match[es] the information previously disclosed,' and (3) was 'made public through an official and documented disclosure.'" *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)).

In addition to authorizing the DNI to withhold intelligence sources and methods, Section 3024(i) may also permit other intelligence agencies to withhold certain information. *Lindsey v. FBI*, 490 F. Supp. 3d 1, 15 (D.D.C. 2020) ("[I]n enacting this statute, Congress gave the *relevant agencies* 'broad power to control the disclosure of intelligence sources.'") (quoting *CIA v. Sims*, 471 U.S. 159, 173 (1985) (emphasis added)). In limited circumstances, this may even extend to non-intelligence agencies. *See, e.g.*, *Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*, 486 F. Supp. 3d 141, 167, 171 (D.D.C. 2020) (The Department of State ("DOS") was allowed to withhold under

An agency properly invokes Exemption 3 to withhold records that are responsive to a FOIA request when (1) the statute it identifies is a statute of exemption, and (2) the material it withholds meets the exemption statute's criteria. *Wilner v. Nat'l Sec. Agency,* 592 F.3d 60, 72 (2d Cir. 2009) (citing *CIA v. Sims,* 471 U.S. 159 (1985)). Exemption 3 is unique among "FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents." *Id.* (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.,* 830 F.2d 331, 336 (D.C. Cir.1987)). Rather, "the sole issue . . . is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Id.* All parties agree that Section 3024(i), which calls on the Director of National Intelligence ("DNI") to "protect intelligence sources and methods from unauthorized disclosure," qualifies as a statute of exemption under Exemption 3. (Def.'s Mem. at 23–24; Pls.' Mem. at 29); *see also Morley v. CIA*, 508 F.3d 1108, 1125 (D.C. Cir. 2007) (upholding use of the National Security Act for Exemption 3 purposes). Plaintiffs challenge whether the material CBP has withheld meets this statute's criteria.

In the context of Exemption 3, even though courts adopt a broad interpretation of the disclosure protections in Section 3024(i), and allowing agencies to withhold material if it merely "*relates to intelligence sources and methods,*" agencies must nonetheless justify the exemption. *Ullah v. CIA*, 435 F. Supp. 3d 177, 187 (D.D.C. 2020) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009); *see, e.g.*, *Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*, 486

---

Exemption 3 but required to submit supplemental information detailing "who at [DOS] has the authority to invoke the National Security Act, and who was involved in making the redactions."); *Riser v. U.S. Dep't of State*, No. CIV. A. 09-3273, 2010 WL 4284925, at *4 (S.D. Tex. Oct. 22, 2010) (Office of Personnel Management ordered to produce supplemental affidavit because "the [DNI] or the CIA must at the very least actually exercise the authority granted by the National Security Act . . . . [which is generally] done through an affidavit from a CIA official."). This issue, however, remains unsettled. *See Mobley v. CIA*, 924 F. Supp. 2d 24, 54 (D.D.C. 2013) (noting that "the [D.C.] Circuit [has] not specifically address[ed] . . . the authority of non-DNI agencies to protect intelligence sources and methods.").

14

F. Supp. 3d 141, 167 (D.D.C. 2020) (agency met its burden when "declaration provide[d] document-by-document explanation of the types of information withheld . . . and supplie[d] the detail necessary for the Court to make a determination about the propriety of the agency's invocation of Exemption 3").

CBP has not sufficiently justified how the redacted information relates to intelligence sources and methods as protected by Section 3024(i). CBP justified its redaction by noting that the document included "information and/or equities" from the Office of the DNI (Howard Decl. ¶ 51), and by explaining that the redacted information pertains to two counterterrorism tools, Terrorist Screening Database and the Terrorist Identities Datamart Environment, which are used by intelligence agencies (Def.'s Mem. at 24–25). The mere fact of originating with or being used by an intelligence agency is not enough to establish that the content relates to an intelligence source or method. *See Berman v. CIA*, 501 F.3d 1136, 1146 (9th Cir. 2007) ("hold[ing] that whether or not a particular document used by the CIA in its ordinary course of business is an intelligence method depends upon the content of the document."). CBP has not provided the necessary detail to describe the type of information withheld or how these tools, which are also discussed in unredacted portions of the same document, constitute a source or method. (*See* Howard Decl. Ex. H at 86–87). Thus, CBP must provide additional explanation to meet its burden. Accordingly, at this juncture, the Court reserves judgment on whether Exemption 3 was properly invoked with respect to this document.[10]

---

[10] Because CBP only invokes Exemption 3 in conjunction with Exemption 7(E), the Court may refrain from considering whether Exemption 3 was properly invoked upon a finding that records were properly withheld under Exemption 7(E).

B.     Exemption 7(E)

Exemption 7(E) allows government agencies to withhold records or information that were "compiled for law enforcement purposes" when records would either "disclose techniques and procedures for law enforcement investigations or prosecutions" or "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681–82 (2d Cir. 2010) (discussing the plain meaning and statutory history of these two conditions). The Court limits its rulings regarding Exemption 7(E) to the ten documents reviewed *in camera*.

To meet the threshold requirement that the withheld records or information were compiled for law enforcement purposes, "an agency must establish a rational nexus between the agency's activity in compiling the documents and 'its law enforcement duties.'" *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 97 (S.D.N.Y. 2018) (quoting *Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987)). Law enforcement duties may entail "not just the investigation and prosecution of offenses that have already been committed, but also proactive steps designed to prevent criminal activity and to maintain security." *Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318, 328 (2d Cir. 2022) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring)). Not every document produced by a law enforcement agency necessarily meets this threshold requirement. *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 397 (S.D.N.Y. 2011). Thus, even though "[t]he detection and prevention of terrorism are archetypal law-enforcement purposes," an agency with such a mission must establish that the specific documents in dispute were compiled for law enforcement purposes. *Knight*, 30 F.4th at 328; *see*

16

*Families for Freedom*, 797 F. Supp. 2d at 397 ("While ICE is unquestionably a federal law enforcement agency, not every document produced by ICE personnel has been 'compiled for law enforcement purposes' under FOIA."); *see also, e.g.*, *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 386–87 (S.D.N.Y. 2014) (threshold requirement satisfied when documents contain information "from law enforcement databases" and "collected and used by CBP in its mission to secure the border"); *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 30 F. Supp. 3d 67, 75 (D.D.C. 2014) (threshold requirement satisfied when there was "a rational nexus to [CBP]'s law-enforcement duties, including the prevention of terrorism and unlawful immigration").

Upon satisfying the threshold requirement, an agency may withhold records under Exemption 7(E) if their production would reveal "techniques and procedures" or "guidelines" for law enforcement investigations or prosecutions. 5 U.S.C. § 552(b)(7)(E). When withholding guidelines, an agency must meet a higher standard by showing that "such disclosure could reasonably be expected to risk circumvention of the law." *Id.*; *Knight*, 30 F.4th at 329. In this context, techniques and procedures include "how law enforcement officials go about investigating a crime." *Lowenstein*, 626 F.3d at 682 (citing *Webster's Third New International Dictionary* (1983)). "The key issue . . . is whether disclosure of that material would reveal particulars about the way in which an agency enforces the law and the circumstances that will prompt it to act." *Knight*, 30 F.4th at 331. In other words, "the actions that law enforcement personnel take to identify and neutralize bad actors" and "the triggers for the application of methods." *Id.* at 330. In contrast, guidelines give "an indication or outline of future policy or conduct" and reflect how an agency allocates its resources. *Lowenstein*, 626 F.3d at 682 (quoting *Webster's Third New International Dictionary* (1983)). In establishing these claims, agencies should be "relatively detailed" and avoid

descriptions that are "generic" or "vaguely formulated." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 246 (D.D.C. 2013).

Based on *in camera* review, the Court finds that the records in the representative sample were compiled for law enforcement purposes. Because they appear to have been created to train and support TTRT officers in carrying out law enforcement duties (*see, e.g.*, *Vaughn* Index Nos. 5, 9, 12), provide guidance for counterterrorism-related inspections at ports of entry (*see, e.g.*, *Vaughn* Index Nos. 16, 18), and share information about CBP's law enforcement and counterterrorism efforts (*see, e.g.*, *Vaughn* Index Nos. 19, 27, 28, 30; Howard Decl. Ex. H at 43–61), these documents meet the rational nexus standard and satisfy the threshold requirement for Exemption 7(E). Further, and as detailed below, each of the challenged records that the Court reviewed *in camera* contains information that, if disclosed, would reveal techniques and procedures for law enforcement investigations. However, most of these records also contain non-exempt information that CBP must segregate and release.

<u>*Vaughn* Index No. 5: TTRT Officer Reference Job Aid 2020</u>. This is a thirty-five-page document that CBP accurately describes as containing information about "internal CBP systems and category codes;" "interview and vetting methods and techniques;" and "law enforcement terminology, techniques and procedures used to assess a person's admissibility when trying to enter the United States." (*Vaughn* Index No. 5). Many pages appear to contain information that was properly withheld. (TTRT Officer Reference Job Aid 2020 at 1–6, 11–14, 17–21).[11] However, several pages include information about administrative and operational processes, or factual content, that may

---

[11] For *Vaughn* Index Nos. 5 and 15, the pinpoint citations refer to the numbers printed on the bottom right side of the document. For Nos. 11, 16, 18, 19, 27, 28, and 30, the pinpoint citations refer to the physical pages of the records submitted for review. For Howard Decl. Ex. H, the pinpoint citations correspond to the page numbers appearing in the ECF header.

not reveal law enforcement techniques, procedures, or guidelines. (*Id.* at 7–9, 15–16, 22–32). This document also includes one page that CBP disclosed to Plaintiffs in a separate record so is not reasonably exempt. (*Compare id.* at 10, *with* Howard Decl. Ex. H at 87). Lastly, a section titled "Arab & Muslim Culture Awareness Job Aid" may have been omitted from the record submitted for *in camera* review. (*See* "Table of Contents" *in* TTRT Officer Reference Job Aid 2020).

*Vaughn* Index No. 11: Culture and Religious Awareness Class. This is a fifty-seven-page presentation that CBP describes as containing information about "different interview and vetting methods and techniques" and "inspections completed by CBP with persons of interest." (*Vaughn* Index No. 11). Most slides relate to how CBP addresses various threats, and several slides include detailed summaries of inspections with identifying information, all of which fall within Exemption 7(E). (Culture and Religious Awareness Class at 16–17, 20–57). However, almost one third of the presentation consists of factual information about religions and associated cultural practices that would not reveal law enforcement techniques, procedures, or guidelines. (*Id.* at 1–15, 18, 19).

*Vaughn* Index No. 15: CTD 10 TTRT Orientation 20200304. This is a seventeen-page presentation about "enforcement unit structures, and chains of command," the "location of certain enforcement teams and enforcement actions," and "specific inspections by CBP with individuals of interest to the Agency." (*Vaughn* Index No. 15). Much of the content was properly withheld as pertaining to techniques and procedures under Exemption 7(E). (CTD 10 TTRT Orientation at 1–9, 11–13, 15–17). However, the presentation also includes information and data about the benefits of TTRTs and their duties and responsibilities, which do not appear to reveal techniques, procedures, or guidelines. (*Id.* at 10, 14).

*Vaughn* Index No. 16: Memorandum – Importance of Targeting Rules. This is a one-page document about "how CBP addresses certain threats." (*Vaughn* Index No. 16). The content would reveal law enforcement procedures and thus qualifies under Exemption 7(E). However, non-exempt information in this document likely could have been segregated, as demonstrated by CBP's treatment of similar memoranda. (*See* Howard Decl. Ex. F at 33; Howard Decl. Ex. H at 3, 36).

*Vaughn* Index No. 18: Muster – Updated Guidance [redacted]. This is a two-page document that addresses "how CBP addresses certain threats" and "how to process individuals should certain circumstances arise." (*Vaughn* Index No. 18). If disclosed, the content would reveal law enforcement procedures and thus qualifies under Exemption 7(E). However, non-exempt information in this document likely could have been reasonably segregated. (*See* Howard Decl. F at 34; Howard Decl. H at 5, 37).

*Vaughn* Index No. 19: Nomination Referrals. This is an eighteen-page presentation that addresses "how CBP addresses certain threats, including known and suspected terrorists;" "internal CBP systems and category codes;" and "how to process individuals should specific circumstances arise." (*Vaughn* Index No. 19). It also describes how CBP categorizes and assesses individuals who may be connected to terrorist activity. (*See, e.g.*, Nomination Referrals at 2, 4–5, 7, 10–11, 13–17). Several slides include identifying information about individuals whom CBP has inspected or investigated. (*Id.* at 3, 8–9, 12). Although much of this content might reveal law enforcement techniques and procedures, at least one slide contains information about legal standards, which is not exempt and CBP could have reasonably segregated and produced. (*Id.* at 6).

*Vaughn* Index No. 27: TOC Watchlisting Overview. This is a fifteen-page presentation about "how CBP addresses certain threats" and "how CBP targets certain individuals for relevant inspections."

(*Vaughn* Index No. 27). Several slides contain information about the watchlisting process and about specific individuals and groups that have been included on a watchlist. (TOC Watchlisting Overview at 3–5, 7–11, 13–14.  However, at least two slides summarize and restate relevant legal authorities (*id.* at 2, 6), and at least one slide contains data and statistics (*id.* at 12), neither of which appear to contain law enforcement techniques, procedures, or guidelines.

*Vaughn* Index No. 28: TTP  [redacted] Presentation. This is a twelve-page presentation about "how CBP addresses certain threats" and "how certain enforcement actions can be utilized by CBP to meet mission critical challenges." (*Vaughn* Index No. 28). Although most slides reveal information about CBP investigations (TTP_[redacted] Presentation at 4–12), a few slides feature images and text that do not appear to contain techniques, procedures, or guidelines (*id.* at 2–3).

*Vaughn* Index No. 30: TTRT [redacted] Accomplishments. This is a thirteen-page document that details "statistics and data related to terrorism linked inspections," such as the "location of inspection and information collected." (*Vaughn* Index No. 30). Several slides also include identifying information about individuals who have been inspected or investigated by CBP. (TTRT [redacted] Accomplishments at 1–8). However, a few pages include descriptive data that do not appear to contain law enforcement techniques, procedures, or guidelines. (*Id.* at 9–13).

Howard Decl. Ex. H, Pages 43–61. This is an eighteen-page presentation pertaining to TTRTs. Most of the redacted content relates to specific locations where TTRTs operate and their investigation techniques, thus qualifying for withholding under Exemption 7(E). However, inconsistent redactions, including TTRT-related imagery withheld from one slide that was disclosed in another (*see* Howard Decl. H at 46, 54), and a description of TTRTs that appeared

21

twice in partially withheld records but was redacted differently each time (*id.* at 20, 51–52), indicate improper withholdings.

In summary, all of the documents reviewed *in camera* contain some information that was properly withheld under Exemption 7(E). However, these documents also appear to include non-exempt information, at least some of which appears to be reasonably segregable.

III.   CBP Has Not Established That It Segregated and Disclosed All Non-Exempt Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt," 5 U.S.C. § 552(b), and demands that agencies "take reasonable steps necessary to segregate and release nonexempt information." *Id.* § 552(a)(8)(A)(ii). Prior to approving an agency's withholding under FOIA, district courts are required to "make specific findings of segregability regarding the documents to be withheld." *Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 41 n.2 (2d Cir. 2020) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)). Agencies may be "entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman,* 494 F.3d at 1117. However, to establish compliance in the face of a *Vaughn* index that is legally insufficient, "an agency must provide other facts, beyond its good-faith assurances." *Trea Senior Citizens League v. U.S. Dep't of State*, 923 F. Supp. 2d 55, 70 (D.D.C. 2013).

When an agency seeks to withhold non-exempt information, it must explain the reasons underpinning their segregability conclusions and "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead*

*Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Generally, an agency may withhold non-exempt information when it is "inextricably intertwined" with information that is exempt. *Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys.,* 463 F.3d 239, 249 n.10 (2d Cir. 2006). However, it must provide a segregability analysis that "show[s] with 'reasonable specificity' why the documents cannot be further segregated." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (quotation omitted). Vague or conclusory declarations are insufficient to explain segregability. *Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004); *see also N.Y. Times. v. FBI*, 297 F. Supp. 3d 435, 443 n.8 (S.D.N.Y. 2017) (upholding Court's demand for a "line-by-line" segregability analysis because the decision is discretionary and such an analysis "would be both helpful and efficient in determining whether the FBI had properly withheld information under FOIA"); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 43 (D.D.C. 2012) (declaration sufficient when it explained "document-by-document and page-by-page, what the contents include and why they could not be produced").

Based on *in camera* review of the sample records, alongside CBP's *Vaughn* index and Howard declaration, the Court finds that CBP has not met its burden with respect to segregability. Although CBP attests that its "personnel and attorneys reviewed each release of records page by page" and confirmed that "[a]ll reasonably segregable portions of the relevant records have been released to the Plaintiffs," (Howard Decl. ¶ 52), the spare facts and boilerplate explanations in the *Vaughn* index do little to support these claims. Moreover, as detailed above, the incorrect and inconsistent withholdings in the ten documents reviewed *in camera* raise serious concerns about CBP's segregability review and point to the likelihood of additional inaccurate withholdings across remaining records. These submissions do not explain what proportion of the withheld information

is non-exempt, nor do they establish that non-exempt information was inextricably intertwined with exempt information. Accordingly, with respect to the documents reviewed *in camera*, the Court is not persuaded that CBP adequately segregated and released non-exempt information; and with respect to the remaining challenged withholdings, the Court is unable to determine whether CBP released all segregable and non-exempt information.

Rather than accept CBP's invitation to engage in further *in camera* or *ex parte* reviews, (Def.'s Mem. at 18 n.4; Def.'s Supp. Mem. at 8–9), the Court reserves judgment on segregability and directs CBP to release all non-exempt and segregable information that has not yet been disclosed and produce a detailed justification for the decision that any non-exempt information is not segregable. *See, e.g.*, *Stahl v. Dep't of Just.*, No. 19-CV-4142 (BMC), 2021 WL 1163154, at *11 (E.D.N.Y. Mar. 26, 2021) (reserving judgment on summary judgment motions until agency submits supplemental memoranda addressing segregability); *Hum. Rts. Watch v. Dep't of Just. Fed. Bureau of Prisons*, No. 13 Civ. 7360 (JPO), 2015 WL 5459713, at *8 (S.D.N.Y. Sept. 16, 2015) (reserving judgment as to a withholding that likely contained segregable, nonexempt information, and allowing agency to provide a "detailed, line-by-line segregability analysis"), *on reconsideration sub nom.* 2016 WL 3541549 (S.D.N.Y. June 23, 2016); *Ferrigno v. U.S. Dep't of Homeland Sec.*, No. 09 Civ. 5878 (RJS), 2011 WL 1345168, at *11 (S.D.N.Y. Mar. 29, 2011) (granting summary judgment "with respect to all but the issue of segregability").

## <u>CONCLUSION</u>

For the reasons set forth above, and as detailed below, both parties' motions for summary judgment are granted in part and denied in part without prejudice.

With respect to the adequacy of the *Vaughn* index and declaration, Plaintiffs' cross-motion is granted and CBP's motion is denied. With respect to the propriety of invoking FOIA Exemptions to withhold information, CBP's motion is granted, and Plaintiffs' motion is denied for records withheld under Exemption 7(E) and reviewed *in camera*, pending the release of segregable non-exempt information and submission of a segregability analysis, as detailed below. The Court reserves judgment insofar as documents that were withheld under Exemptions 3 and 7(E) but not reviewed *in camera*. Lastly, with respect to whether non-exempt information was reasonably segregated and released, the Court reserves judgment.

CBP is directed to release all non-exempt and segregable information, submit an amended or supplemental *Vaughn* index and/or declaration that adequately establishes its Exemption 3 and 7(E) claims, and provide a reasonably specific segregability analysis. The segregabilty analysis must address all documents challenged in Plaintiffs' cross-motion, provide a detailed description of withheld information, and explain how non-exempt material is dispersed throughout each document. These must be submitted by December 16, 2022. The Court will hold a telephone conference to discuss further proceedings on December 27, 2022, at 12:00 P.M.

SO ORDERED.

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: November 2, 2022
Brooklyn, NY

25